J-S28016-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BOBBI JO ISENBERG | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWARD WRIGHT | : | |
| | : | |
| Appellant | : | No. 222 WDA 2023 |

Appeal from the Order Entered January 24, 2023
In the Court of Common Pleas of Butler County Civil Division at No(s):
No. F.C. 21-90175-A

BEFORE:   PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.*

MEMORANDUM BY OLSON, J.:                **FILED:  September 12, 2023**

Appellant, Edward Wright ("Father"), appeals from an order entered January 24, 2023 that granted a petition filed by Bobbi Jo Isenberg ("Mother") which sought protection from abuse pursuant to the Protection from Abuse Act ("PFA"), 23 Pa.C.S.A. § 6101, *et. seq.*[1]  We affirm.

The trial court summarized the relevant facts and procedural history of this case as follows.

> [Mother] resides in Butler, Butler County, Pennsylvania. The parties share physical custody of their minor children pursuant to a custody order entered in Lawrence County[, Pennsylvania. Mother] exercises primary physical custody, subject to Father's partial physical custody every other weekend.  The custody litigation in Lawrence County is extremely litigious.  Since 2021, [Mother] sought protection orders in Butler County against

---

* Former Justice specially assigned to the Superior Court.

[1] At times hereinafter, we may refer to the January 24, 2023 order as a 'PFA order.'

[Father] on at least two [] separate occasions. She pursued protection orders in Lawrence County in 2013 and 2020.

On January 12, 2023 at approximately 5:50 p.m., [Mother] drove both children to the designated custody exchange location at a convenience store in New Castle[, Pennsylvania]. At all custody exchanges, [Father] is required to wait for the children to exit [Mother's] vehicle and they walk to [Father's] vehicle. [Father] must wait until [Mother] leaves the premises, before he may leave with the children. At the custody exchanges, [Father] is not permitted to directly approach or address [Mother].

[Father] was irritated when [Mother] arrived at the custody exchange on January 1[2], 2023. He rushed toward the children. During the ride in [Mother's] vehicle from Butler to New Castle, the parties' youngest child, A.I., removed her coat and shoes and fell asleep. At the exchange, [Father] screamed at the children when [the parties' oldest child,] M.I.[,] rushed back to [Mother's] vehicle to retrieve A.I.'s coat. [Father] became angry, as M.I. attempted to locate her younger sister's coat. He began calling [Mother] names in front of the children and slammed her vehicle door with enough force for [Mother] to suspect damage. When [Mother] walked around her car to check for damage, [Father] followed her and continued to aggressively yell and call her names. He also yelled in a threatening manner at both children, as they struggled to find their belongings. [Mother] indicated she was going to call 911 [], so [Father] left the custody exchange with both children.

[Mother] filed [a PFA petition] on the following morning in Butler County [on behalf of herself, as well as M.I. and A.I.]. [The trial court held a final PFA hearing on Mother's petition on January 24, 2023]. Of significance, [Father] appeared unrepresented at the [final PFA hearing. Mother] was present and represented by William Creighton, [Esquire]. Both parties testified and, at the conclusion of their testimony, M.I. was interviewed on the record [by the court] in chambers, but not in the presence of [Mother's] counsel and [Father].

Trial Court Opinion, 4/10/23, at 1-3 (superfluous capitalization omitted).

Ultimately, the trial court granted Mother's PFA petition and entered a

final PFA order prohibiting Father from contacting Mother, M.I., and A.I for a

period of one year. Trial Court Order, 1/24/23, at *1-*4 (unpaginated). Thereafter, Father, through counsel, filed a motion for reconsideration and a motion to release the full transcripts from the final PFA hearing. A hearing on Father's motions was conducted on February 7, 2023. The trial court entered an order denying both of Father's motions on February 9, 2023.[2] This timely appeal followed.

Father raises the following issue on appeal:

Did the trial court err when it denied [Father] the due process right to cross-examine the minor child[, M.I., during the final PFA] hearing?

Father's Brief at 7.

In his sole appellate issue, Father takes issue with the trial court's decision to interview the minor child, M.I., in chambers and out of the parties' presence, which denied Father an opportunity to conduct cross-examination. Father argues that, because he was "wholly excluded from M.I.'s testimony" and not permitted to cross-examine her, his due process rights were violated. Appellant's Brief at 12.

Upon review, we are constrained to find this issue waived. Here, Father did not object to the trial court's alleged error at the PFA hearing and, thus,

---

[2] In Father's motion to release the full transcript from the final PFA hearing, Father specifically asked the trial court to release the portion of the transcript that contained M.I.'s testimony. In the trial court's February 9, 2023 order, the court denied Father's request to release the transcript, but permitted Father's counsel to review the requested transcript (including the portion that memorialized M.I.'s *in camera* interview with the court) at the Butler County Government Center. Trial Court Order, 2/9/23, at 1.

he cannot raise the issue for the first time before this Court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). While it is highly probable that Father's *pro se* status led to his failure to raise an appropriate objection at the PFA hearing, this Court has consistently held that "*pro se* status confers no special benefit upon [a litigant]." *In re Ullman*, 995 A.2d 1207, 1211–1212 (Pa. Super. 2010) (citations omitted). "To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." *Id.* at 1212 (citations omitted).[3] Based upon the foregoing, we hold that Father waived the issue presented in his brief.

_____

[3] On appeal, Father sets forth the following argument regarding waiver:

> The trial court in this matter did not indicate at any time on the record that the minor child was in fact testifying in chambers. The [trial court] merely asked to "speak" with the minor child[, M.I.]. With no determination made whatsoever as to what the [trial court] was requesting, [Father] cannot be required to object to preserve an issue that was not ma[d]e of record at the time of the proceeding.

Father's Brief at 15. In essence, Father claims that, because the trial court did not specifically say that it planned to have M.I. testify and, instead, indicated a desire to "speak" to M.I., he cannot be faulted for failing to object. Contrary to Father's claim, a review of the hearing transcripts reveals that Father did, in fact, know that M.I. provided testimony to the court. Indeed, after the trial court concluded its interview, Father stated: "Every time she put [*sic*] a PFA on me, she involves our children to **testify** against me." N.T. Hearing, 1/24/23, at 29 (emphasis added). It is therefore apparent that Father, through prior PFA proceedings, was aware that M.I. would likely testify during her interview with the trial court. Notwithstanding, Appellant failed to lodge an objection.

- 4 -

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  9/12/2023